Tutor Perini Corp. v State of New York (2022 NY Slip Op 05556)

Tutor Perini Corp. v State of New York

2022 NY Slip Op 05556

Decided on October 5, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 5, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
VALERIE BRATHWAITE NELSON
SHERI S. ROMAN
WILLIAM G. FORD, JJ.

2018-13795

[*1]Tutor Perini Corporation, etc., respondent-appellant,
v
State of New York, appellant-respondent. (Claim No. 120992)

Letitia James, Attorney General, New York, NY (Victor Paladino, Seth M. Rokosky, and Owen Demuth of counsel), for appellant-respondent.
Duane Morris, LLP, New York, NY (Mark A. Canizio of counsel), for respondent-appellant.

DECISION & ORDER
In a claim, inter alia, to recover damages for breach of contract, the defendant appeals, and the claimant cross-appeals, from an order of the Court of Claims (Francis T. Collins, J.), dated May 15, 2018. The order, insofar as appealed from, denied those branches of the defendant's motion which were for summary judgment dismissing the first, second, third, seventh, eighth, eleventh, and twelfth causes of action, and granted the claimant's cross motion for summary judgment dismissing the first and second affirmative defenses and first and second counterclaims. The order, insofar as cross-appealed from, granted those branches of the defendant's motion which were for summary judgment dismissing the fourth, fifth, sixth, ninth, and tenth causes of action.
ORDERED that the order is modified, on the law, by deleting the provision thereof denying that branch of the defendant's motion which was for summary judgment dismissing the eleventh cause of action, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
On July 19, 2000, the claimant, after competitive bidding, was awarded a contract with the defendant, the State of New York, to construct a complex roadway and to reconstruct a bridge at the Long Island Expressway/Cross Island Parkway interchange. The contract was plagued by delays which the claimant asserts were the fault of the State. The last day of work was November 10, 2005. In August 2011, the State computed that the claimant was due the sum of $151,842,985.61, but had been paid the sum of $152,376,076.79, leaving the sum of $533,091.18 as an "offset."
In March 2012, the claimant commenced this claim, seeking, inter alia, to recover damages for extended overhead costs, rental costs of temporary concrete barriers, additional costs attributable to delays, which were referred to as "Time Related Lump Sum Items," additional costs attributable to design changes, and fees assessed by the State for lane closures during the project. In its answer, the State asserted, among other things, two affirmative defenses sounding in fraud and illegality, i.e., (1) that the claimant committed fraud by claiming that it intended to hire certain specified minority-owned and women-owned subcontractors to satisfy requirements for minority-[*2]owned and women-owned businesses to participate in the work, without any intent to engage those subcontractors, and (2) that during the course of performance of the contract, the claimant said that it was hiring certain minority-owned and women-owned subcontractors when it in fact was not doing so and was engaged in a criminal and fraudulent conspiracy with those subcontractors. The State also asserted two counterclaims to recover damages based upon those allegations.
The State moved for summary judgment dismissing the claim based upon illegality and fraud, on the ground that the claimant did not use the work of the minority-owned and women-owned subcontractors which it originally identified to meet the requirement that 18% of the work was to be performed by minority-owned and women-owned subcontractors. Further, as the State noted, two of the claimant's executives were involved in a criminal investigation involving the use of fraudulent minority-owned and women-owned subcontractors, and were ultimately indicted on related charges. The State further asserted that the claimant did not comply with contract grievance procedures in seeking compensation for disputed charges, and sought dismissal of the fourth, fifth, sixth, eighth, ninth, tenth, and eleventh causes of action on that basis.
The claimant, in opposition, noted that the State was not challenging the back-up information submitted in support of the first, second, third, or seventh causes of action on record-keeping grounds. Further, the claimant cross-moved for summary judgment dismissing the first and second affirmative defenses and the first and second counterclaims, sounding in fraud and illegality, noting that an audit memorandum dated November 10, 2005, stated that the minority-owned and women-owned business participation in the project exceeded the 18% goals.
In the order on appeal, the Court of Claims noted that the State did not dispute the fact that the claimant satisfied the goal of using minority-owned and women-owned businesses for 18% of the work. Therefore, the court concluded that the alleged fraud in the inducement—securing the award of the contract by misrepresenting that certain specified subcontractors would do work on the project—resulted in no harm. The court also determined that the contract was not illegal in its inception and there was no direct connection between the illegal transactions (using front subcontractors) and the obligation sued upon. However, the court granted those branches of the State's motion which were for summary judgment dismissing the fourth, fifth, sixth, ninth, and tenth causes of action. Further, the court found that, with respect to the eighth cause of action, the claimant included lane rental charges in its monthly invoices for extended overhead claims. The court found that since the parties agreed on this procedure to determine extended overhead claims, there was a triable issue of fact as to whether the State waived strict compliance with record-keeping requirements with respect to lane rental charges.
Finally, with respect to the eleventh cause of action, which sought damages based upon the alternative total cost method—based upon actual costs plus an allowance for overhead and profit minus amounts paid by the State—the Court of Claims noted that the total cost method was "the same as the quantum meruit basis" for computing damages, which is appropriately used "when there is a qualitative change in the work." The court found that the State "offered no support for its contention that the computation of damages on a quantum meruit basis was inappropriate," since theories of recovery may be pleaded in the alternative.
The State appeals and the claimant cross-appeals.
Contrary to the contention of the State, the contract was not unenforceable based upon illegality nor could it be rescinded based upon fraud in the inducement. The contract itself was legal and for a legal purpose. At issue here is whether the claimant's illegal acts in performance of an legal contract vitiates its right to recover. "In order for such a forfeiture to occur, '[t]here must at least be a direct connection between the illegal transaction and the obligation sued upon. Connection is a matter of degree'" (Alpha Interiors, Inc. v Tulger Constr. Corp., 101 AD3d 660, 661, quoting McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 471). A contract may be unenforceable if it is the product of collusive bidding (see Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187) or involved a bribery or kickback scheme (see CPN Mech., Inc. v Madison Park Owner, LLC, 120 AD3d 1148; FCI Group, Inc. v City of New York, 54 AD3d 171, 177-178), which may affect [*3]the contract price and the amount due.
Here, the alleged illegality did not affect the contract price or amount due. Further, since the goal that 18% of the work would be performed by minority-owned and women-owned subcontractors was ultimately complied with, the contract was ultimately performed in a legal fashion.
On the question of whether the contract was the product of fraud in the inducement, the elements of fraud are a material misrepresentation of a fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance on the misrepresentation, and injury (see 1810 E & J Rest. Corp. v Red & Blue Parrot, Inc., 150 AD3d 648; Urquhart v Philbor Motors, Inc., 9 AD3d 458), which need not be pecuniary in nature (see Board of Mgrs. of the Soundings Condominium v Foerster, 138 AD3d 160, 164). However, "injury in some sense" must be shown (Dornberger v Metropolitan Life Ins. Co., 961 F Supp 506, 543 [SD NY]).
Here the State did not allege an injury. The claimant ultimately used different minority-owned or women-owned subcontractors than those it initially claimed it would use, but there is no indication that use of particular subcontractors was material so long as the goal of 18% was met.
Further, the alleged fraud did not relate to whether the claimant was a responsible bidder, or was somehow disqualified from bidding (see Omni Contr. Co., Inc. v City of New York, 84 AD3d 763; R.A.C. Group, Inc. v Board of Educ. of City of N.Y., 21 AD3d 243; Prote Contr. Co. v New York City School Constr. Auth. [Christopher Columbus H.S.], 248 AD2d 693; Matter of Schiavone Constr. Co. v Larocca, 117 AD2d 440). Executives of the claimant were ultimately criminally charged, but there is no evidence that their crimes would disqualify the claimant, which was a publicly-traded corporation, from bidding. Accordingly, the claimant established its entitlement to judgment as a matter of law dismissing the first and second affirmative defenses and first and second counterclaims, and the State failed to raise a triable issue of fact (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 855; Zuckerman v City of New York, 49 NY2d 557, 562).
The general rule is that notice and reporting requirements in public construction contracts "must be literally performed" where, as here, they are designated as conditions precedent (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645), and failure to comply warrants summary judgment dismissing the claim (see A.H.A. Gen. Constr. v New York City Hous. Auth., 92 NY2d 20, 30-31; C & L Elec., Inc. v City Univ. of N.Y., 169 AD3d 755). Such contractual rights may be knowingly, voluntarily, and intentionally abandoned by affirmative conduct, or a failure to act which evinces an intent to waive the right. However, a waiver is not presumed and must be based upon a clear manifestation of intent (see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104).
With respect to the eighth cause of action, the Court of Claims concluded that the contract's record-keeping requirements were not met, but there was an issue of fact as to whether the State waived strict compliance with the contract's record-keeping requirements because the claimant included the items in issue—lane rental charges—in its monthly invoices for extended overhead claims, which allegedly was an agreed-upon procedure to determine extended overhead claims. Although a discussion of disputed items during the dispute resolution process does not demonstrate a waiver of notice and record-keeping requirements—since settlement talks do not waive contractual provisions (see Fahs Constr. Group, Inc. v State of New York, 123 AD3d 1311, 1312)—what is alleged here is a procedure developed between the parties for computing the cost of performance while performance was ongoing. Thus, the claimant raised a triable issue of fact as to whether the State waived record-keeping requirements with respect to those charges, which precluded the granting of summary judgment.
However, a waiver of one provision of a contract or one breach of a contract does not waive other provisions and other breaches of the contract (see Kamco Supply Corp. v On the Right Track, LLC, 149 AD3d 275, 283-284; EchoStar Satellite L.L.C. v ESPN, Inc., 79 AD3d 614). Thus, [*4]the triable issue of fact raised with respect to the eighth cause of action did not raise a triable issue of fact with respect to the other causes of action in issue.
Contrary to the conclusion of the Court of Claims, that branch of the State's motion which was for summary judgment dismissing the eleventh cause of action, which sought damages based upon a "total cost," or quantum meruit, method of recovery, should have been granted, on the ground that parties to a valid contract cannot seek damages in quantum meruit as an alternative to a breach of contract claim arising out of the same subject matter (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388; Hoeg Corp. v Peebles Corp., 153 AD3d 607, 610; TADCO Constr. Corp. v Dormitory Auth. of the State of N.Y., 139 AD3d 471). Quantum meruit may be pleaded in the alternative where there is a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue (see Hochman v LaRea, 14 AD3d 653). Here, there clearly was a valid contract, and the amount in dispute was incurred pursuant to the contract. Further, the claims did not involve a qualitative change in the nature of the work which was outside the contemplation of the contract (see Charles T. Driscoll Masonry Restoration Co., Inc. v County of Ulster, 40 AD3d 1289, 1292; cf. Triple Cities Constr. Co. v State of New York, 194 AD2d 1037; Tufano Contr. Corp. v State of New York, 25 AD2d 329).
The parties' remaining contentions are without merit.
DILLON, J.P., BRATHWAITE NELSON, ROMAN and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court