Gates v Gates (2026 NY Slip Op 01184)

Gates v Gates

2026 NY Slip Op 01184

Decided on March 4, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 4, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
WILLIAM G. FORD
LOURDES M. VENTURA
DONNA-MARIE E. GOLIA, JJ.

2024-06868
2024-10017
 (Index No. 608457/19)

[*1]George Gates, etc., appellant,
vNancy Gates, respondent.

Jakubowski, Robertson, Maffei, Goldsmith & Tartaglia, Saint James, NY (Chase Prochaska and Mark Goldsmith of counsel), for appellant.
Greenberg Traurig, LLP, Garden City, NY (John P. McEntee of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from (1) an order of the Supreme Court, Suffolk County (George M. Nolan, J.), dated April 11, 2024, and (2) a judgment of the same court entered July 11, 2024. The order granted the defendant's motion for summary judgment dismissing the complaint and pursuant to CPLR 6514(a) to cancel notices of pendency filed against the subject properties and denied the plaintiff's cross-motion for leave to amend the complaint. The judgment, upon the order, is in favor of the defendant and against the plaintiff dismissing the complaint and cancelling the notices of pendency filed against the subject properties.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is affirmed; and it is further,
ORDERED that one bill of costs is awarded to the defendant.
The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
In March 1994, Manuela D. Gates (hereinafter the decedent) and the defendant, her daughter, among others, entered into a contract (hereinafter the agreement) in which the decedent transferred two parcels of real property (hereinafter the properties) to the defendant, in exchange for the defendant executing a mortgage on the properties, plus paying additional sums to satisfy the debt of Susan J. Esandrio, who is another daughter of the decedent and the sister of the defendant, Susan's former husband, and the business of Susan and her former husband, PSJ & G, Inc. (hereinafter collectively the obligors). The parties entered into the agreement because the decedent had mortgaged the properties on behalf of the obligors, the obligors had failed to make the appropriate [*2]mortgage payments, and the properties were in foreclosure. The agreement required the defendant to reconvey the properties to the decedent only if the obligors paid the defendant back in full, including satisfying the mortgage, paying for any repair bills and maintenance charges not covered by rentals received from the properties, and refunding all closing costs incidental to procuring and closing the mortgage. If the obligors defaulted on their obligations, the defendant was permitted, inter alia, to sell or keep both properties, provided the defendant give 30 days notice of her intention to do so to permit the obligors or the decedent to cure the obligors' default. All of the parties were represented by counsel when they entered into the agreement.
The plaintiff, George Gates, as administrator of the estate of the decedent, commenced this action against the defendant, asserting causes of action sounding in breach of contract, conversion, and waste by a trustee and for an accounting. The plaintiff alleged that the defendant failed to reconvey the properties to the decedent as required under the agreement. Thereafter, the defendant moved for summary judgment dismissing the complaint and pursuant to CPLR 6514(a) to cancel the notices of pendency filed by the plaintiff against the properties. The plaintiff cross-moved for leave to amend the complaint. The plaintiff sought leave to add a cause of action to impose a constructive trust.
In an order dated April 11, 2024, the Supreme Court granted the defendant's motion for summary judgment dismissing the complaint and pursuant to CPLR 6514(a) to cancel the notices of pendency filed by the plaintiff against the properties and denied the plaintiff's cross-motion for leave to amend the complaint. On July 11, 2024, the court entered a judgment in favor of the defendant and against the plaintiff dismissing the complaint and cancelling the notices of pendency filed by the plaintiff against the properties. The plaintiff appeals from the judgment.
The Supreme Court properly determined that the defendant was entitled to summary judgment dismissing the complaint. While, as noted by our dissenting colleague, the agreement between family members did not constitute a pure commercial transaction, this action sounds primarily in breach of contract. "The essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach" (Hymowitz v Nguyen, 209 AD3d 997, 1000 [internal quotation marks omitted]; see JER Realty, LLC, v Pick & Pack Hub, LLC, 236 AD3d 1004, 1005). "Express conditions precedent must be literally performed; substantial performance will not suffice, and failure to strictly comply with such provisions generally constitutes waiver of a claim" (Misty Cleaning Servs., Inc. v Independent Group Home Living Program, Inc., 223 AD3d 897, 899 [alterations and internal quotation marks omitted]; see Schindler El. Corp. v Tully Constr. Co., Inc., 139 AD3d 930, 931). Here, the defendant established, prima facie, that the obligors failed to perform an express condition precedent in the agreement, by submitting, among other things, a copy of the agreement and a transcript of Susan's deposition testimony in which she admitted that none of the obligors paid the closing costs due under the agreement. There is, in fact, no dispute that the obligors did not satisfy this express condition precedent of the agreement.
In opposition, the plaintiff failed to raise a triable issue of fact. Contrary to our dissenting colleague's determination, Susan's conclusory affidavit that the defendant frustrated compliance with the terms of the agreement did not raise a triable issue of fact (see V. Savino Oil & Heating Co. v Rana Mgt. Corp., 161 AD2d 635, 635), and the timing of the notice of default did not constitute a waiver, where Susan admitted that the obligors owed money that was not paid and where the agreement did not require the defendant to send a notice of default within a set period of time. Further, the plaintiff's contention that the obligors substantially complied with the agreement did not raise a triable issue of fact, as express conditions precedent must be literally performed (see Misty Cleaning Servs., Inc. v Independent Group Home Living Program, Inc., 223 AD3d at 899). In addition, certain statements between the defendant and Susan did not raise a triable issue of fact as to whether the defendant waived her rights under the agreement. "A waiver is not presumed and must be based upon a clear manifestation of intent" (Tutor Perini Corp. v State of New York, 209 AD3d 692, 697). Here, the statement between the defendant and Susan that Susan could "worry about [repayment] later" was not sufficient to demonstrate that the defendant intended to waive [*3]repayment.
The Supreme Court properly dismissed the cause of action for an accounting. "A cause of action for accounting requires the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest" (Greenberg v Wiesel, 186 AD3d 1336, 1338 [internal quotation marks omitted]). Here, the defendant established, prima facie, that the plaintiff has no interest in the properties. The agreement provided that the defendant was conveyed the properties. It further provided that only once the conditions precedent were complied with was the defendant required to reconvey the properties to the decedent. As Susan admitted that the closing costs were never paid, the defendant's obligation to reconvey the properties never arose. The plaintiff failed to raise a triable issue of fact in opposition.
The Supreme Court also properly dismissed the cause of action alleging conversion. "While a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, a breach of contract, a cause of action alleging conversion cannot be predicated on a mere breach of contract" (Woodmere Rehabilitation & Health Care Ctr., Inc. v Zafrin, 197 AD3d 1263, 1268 [alterations and internal quotation marks omitted]). Here, the defendant established, prima facie, that the plaintiff's cause of action alleging conversion was predicated upon an alleged breach of contract (see Li v Navaretta, 220 AD3d 758, 760). The plaintiff failed to raise a triable issue of fact in opposition as to whether the cause of action alleging conversion was predicated upon an alleged breach of contract.
The Supreme Court also properly dismissed the cause of action alleging that the defendant was a trustee who committed waste. The defendant established, prima facie, that she did not hold title to the properties as a trustee. The agreement specifically stated that the properties were conveyed to the defendant, and she had no obligation to reconvey the properties unless the obligors paid her back in full. Nothing in the agreement indicated that the defendant held the properties as a trustee. In opposition, the plaintiff failed to raise a triable issue of fact.
The Supreme Court also properly denied the plaintiff's cross-motion for leave to amend the complaint. "In the absence of prejudice or surprise resulting directly from the delay in seeking leave, applications to amend or supplement a pleading are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit" (Mitchell v Jimenez, 233 AD3d 773, 776 [internal quotation marks omitted]; see US Bank N.A. v Murillo, 171 AD3d 984, 985). The additional cause of action in the proposed amended complaint was a cause of action to impose a constructive trust. A cause of action to impose a constructive trust will fail where the subject matter thereof is governed by "express written contracts" (Hamrick v Schain Leifer Guralnick, 146 AD3d 606, 607; see e.g. Minzer v Minzer, 206 AD3d 721, 724). Thus, here, the court properly determined that the proposed cause of action to impose a constructive trust was patently devoid of merit because of the existence of a valid and enforceable written contract.
The plaintiff's remaining contentions are without merit.
FORD, VENTURA and GOLIA, JJ., concur.
BARROS, J.P., concurs in part and dissents in part, and votes to dismiss the appeal from the order and to reverse the judgment, on the law, deny the defendant's motion for summary judgment dismissing the complaint and pursuant to CPLR 6514(a) to cancel the notices of pendency filed against the subject properties, grant the plaintiff's cross-motion for leave to amend the complaint, and modify the order accordingly, with the following memorandum:
Although the defendant attempts to characterize the transaction at issue as a commercial transaction, it involved a mother using assets in her sole name to help her daughter and then seeking help from her other daughter to preserve those assets for the benefit of the family. The transaction involved more than the contractual obligations of the plaintiff's mother, Manuela D. Gates (hereinafter the decedent), against the plaintiff's sister, Nancy Gates, the defendant, and the [*4]obligors under the contract in issue. The relationship between the parties to this action was not defined by the contract, and their interactions were not limited to the performance of the contract. At issue is the distribution of two properties initially owned by the decedent, one of which was used as the decedent's residence and the second of which was used as a family vacation home and later rented out to provide income to the decedent, who died on February 9, 2018.
The instant action was commenced in May 2019, by the plaintiff, George Gates, as administrator of the estate of the decedent, against his sister, the defendant. The plaintiff was the decedent's son, who was not a party to the contract but was a distributee of the decedent's estate, as well as its administrator.
The complaint alleged that prior to March 9, 1994, the decedent owned two parcels of property, one located in Sound Beach and one located in Hicksville. The complaint further alleged that in a written agreement dated March 9, 1994 (hereinafter the agreement), the decedent agreed to convey those properties to the defendant to satisfy existing secured obligations against the properties incurred to help the defendant's sister, Susan J. Esandrio (hereinafter Susan), Susan's former husband, and the dry-cleaning business of Susan and her former husband, PSJ & G, Inc. (hereinafter collectively the obligors). A mortgage loan in an amount in excess of $200,000 was going into foreclosure, so the defendant agreed to mortgage the properties in her name to satisfy the mortgage loan.
The agreement required that the obligors would pay the defendant "all closing costs incident to the procural and closing of the said mortgages" within three years of the closing, a "sum sufficient to make both monthly mortgage payments," and the aggregate of repair bills and maintenance charges, less "all net rentals received from any occupants of the said realty." In other words, rent was to be used to pay carrying charges on the properties, and any excess was to be paid by the obligors. After all payments were made to the defendant, the defendant would reconvey the two parcels of real property to the decedent. The agreement provided that in the event of a default, a notice of default was to be sent by certified mail, return receipt requested, giving 30 days to cure, but the plaintiff noted in the complaint that no such notice was given to the decedent or any other party to the agreement.
The plaintiff further alleged that the mortgage obligations were satisfied in October 2017, obligating the defendant to reconvey the properties to the decedent. The complaint asked for specific performance of the agreement, for an accounting of rents collected by the defendant before and after the decedent's death on February 9, 2018, damages for conversion of those rents, and a money judgment for waste committed by the defendant as holder of the properties as trustee for the decedent's estate. In her answer, the defendant asserted, without further elaboration, that the decedent and the other parties to the agreement "defaulted on their obligations under the Agreement and may not enforce any rights under it."
It is undisputed that at the time this action was commenced, the mortgages on the properties had been satisfied in October 2017, some four months before the decedent's death in February 2018. Although the issue of closing costs was not raised in the answer, the question of whether the closing costs had been paid was raised during discovery.
On or about August 8, 2023, more than 4 years after the instant action was commenced, and more than 25 years after the closing costs were due, the defendant served a notice of default upon Susan and the plaintiff, asserting that they owed a total of $176,588.64 in closing costs based on closing costs in the principal sum of $48,365, plus statutory interest of 9% per annum from March 9, 1994, until August 11, 2023, and further expenses of $135,477.12 for taxes, plus per diem interest, and $14,863.54 for insurance premiums, plus per diem interest for the period from February 2018, when the decedent died, until August 2023, when the notice of default was issued. The defendant acknowledged that the plaintiff timely objected to the notice by letter dated August 22, 2023, based, inter alia, on the long delay in sending the notice of default.
In September 2023, the defendant moved for summary judgment dismissing the [*5]complaint and pursuant to CPLR 6514(a) to cancel the notices of pendency filed by the plaintiff against the properties, contending, in response to the plaintiff's objections to her notice of default, among other things, that there was no deadline for service of a notice of default.
The plaintiff opposed the defendant's motion and cross-moved for leave to amend the complaint to add a cause of action to impose a constructive trust on the properties for the benefit of the decedent's estate. He alleged, inter alia, that $600,000 had been paid to satisfy the obligations pursuant to the agreement and that the defendant waived the timely payment of closing costs.
In an order dated April 11, 2024, the Supreme Court granted the defendant's motion, among other things, for summary judgment dismissing the complaint and denied the plaintiff's cross-motion for leave to amend the complaint, noting that the defendant sent the obligors a written notice of default on August 8, 2023. Thereafter, the court issued a judgment in favor of the defendant and against the plaintiff dismissing the complaint and cancelling the notices of pendency filed by the plaintiff against the properties. The plaintiff appeals.
"To succeed on a motion for summary judgment, the proponent of the motion must 'make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (Golobe v Mielnicki, 44 NY3d 86, 92 [internal quotation marks omitted], quoting Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 833). The defendant failed to meet that burden. Rather, the record demonstrates that there are sharply contested triable issues of fact.
Notably, there is no closing statement in the record. Therefore, the amount of closing costs was based upon the defendant's allegations as to what it was and certain checks issued by her at the closing. Those checks included a check for $30,111.33, payable to herself, which she claimed was used to satisfy unspecified liens. At her deposition, the defendant acknowledged that she did not recall the total amount of the closing costs. Citing CPLR 5004(a), the notice of default also assessed statutory interest against the plaintiff from March 9, 1994, when the agreement was signed, despite the fact that Susan and the decedent, pursuant to the terms of the agreement, were given three years to pay closing costs.
Further, the absence of a notice of default was alleged in the complaint, but the defendant waited more than four years after the action was commenced, and after depositions had been held, to provide one. When she finally did so, the defendant alleged substantial obligations for interest on closing costs, taxes, plus per diem interest, and insurance premiums, plus per diem interest, which either were not asserted in a counterclaim or accrued after the action was commenced, despite her being in sole possession of the properties and collecting rent therefrom. The defendant acknowledged that the locks on the properties were changed, and she had sole access to the properties. Assuming that the defendant had a right to retain the properties during that period, pursuant to the terms of the agreement, those obligations should have been offset by rent. Moreover, there was no provision in the agreement allowing for per diem interest.
Thus, the notice of default did not specifically apprise the plaintiff as to what was required to cure the alleged default (see 542 Holding Corp. v Prince Fashions, Inc., 46 AD3d 309), nor did it provide an "approximate good faith sum" allegedly due (Schwartz v Weiss-Newell, 87 Misc 2d 558, 561 [Civ Ct, NY County]). Further, although the agreement did not specify a time limit for sending a notice of default, the validity of this belated notice of default was impaired by laches. The extensive delay, which was at least 4 years after the action was commenced and 25 years after the obligation to pay closing costs accrued, could be deemed a waiver of what has been characterized as a condition precedent to performance, i.e., the payment of the closing costs—whatever they were (see Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC, 30 AD3d 1, affd 8 NY3d 59).
"A duty to speak arises where there is a duty of fair dealing between the parties pursuant to a contractual relationship, and failure to speak is inconsistent with honest dealings and misleads another" (533 Park Ave. Realty, LLC v Park Ave. Bldg. & Roofing Supplies, LLC, 156 AD3d 744, 747-748 [internal quotation marks omitted]). In this case, the defendant's silence was [*6]a breach of her duty to act in good faith, especially since she assessed interest for the period of her silence and did not explain the basis for her claims.
Further, the plaintiff alleged that the defendant's silence extended further, prior to commencement of this action in May 2019, and prior to the decedent's death in February 2018. Susan testified at her deposition that the "last time I remember talking to her about it was when my mother was dying," when the defendant gave a typical answer of "Don't worry about it. We'll worry about it later." Susan averred in an affidavit that based on her familial relationship with the defendant, when the defendant "told [her] not to worry about the payments and we would work it out later. I trusted her implicitly and did not even consider that it was necessary to have the agreement modified or changed in writing." Susan also averred that prior to the commencement of the litigation (and prior to receipt of the notice of default) she "offered significant money . . . to repay the amount, but could never get an actual number from [the defendant] what was owed and offers were refused."
The plaintiff argued that the belated notice of default, sent more than 25 years after the closing costs were due, constituted a waiver of closing costs, since the obligors continued to pay the mortgage on both properties until they were fully satisfied, which they would have no reason to do if they were already in default and had already forfeited the properties. Further, the failure to comply with the alleged condition precedent was not asserted as a defense in the defendant's answer, which could constitute a waiver (see Bloom v Helmsley Spear, LLC, 237 AD3d 418).
Moreover, the defendant's alleged refusal to accept offers of "significant money . . . to repay the amount" and failure "to get an actual number from [the defendant] what was owed," necessarily would have frustrated compliance with the obligation to pay closing costs. A "party to a contract cannot rely on the failure of another to perform a condition precedent where he [or she] has frustrated or prevented the occurrence of the condition" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 646 [internal quotation marks omitted]). There are at least triable issues of fact as to whether the defendant frustrated compliance, since she waited until the action was pending for years before specifying the amount demanded, which should have been asserted in the answer—and then added additional interest.
When the defendant finally afforded the plaintiff an opportunity to pay the closing costs, the amount demanded had been increased at least three-fold, based upon interest, which was not included as a term of the agreement. These are undisputed facts—not conclusory assertions.
Further, the defendant acknowledged at her deposition that, prior to the commencement of the action, when the mortgage obligations were satisfied, she received a check dated June 30, 2017, for $4,158.98, which was an overpayment and which she gave to the decedent to deposit in a joint account she held with the decedent for the payment of bills. There is no indication that the defendant ever notified the decedent formally or informally that additional sums were owed to the defendant or otherwise granted the decedent an opportunity to redeem her properties. There is no indication that the decedent intended to disinherit her other two children, including her son, the administrator who was purportedly unaware of the status of the two properties or of the agreement.
The defendant further testified at her deposition that during her lifetime, the decedent lived at the Hicksville property, and the remainder of the properties were occupied by tenants, who paid an aggregate rent of approximately $3,100 per month. The defendant further testified that the rent was used to pay the taxes and insurance premiums on the properties. However, the agreement did not provide for what would happen to rent in excess of the carrying charges of the properties.
Susan testified at her deposition that the decedent sent Susan's former husband $500 per month, which was used to pay taxes and insurance premiums on the properties, but the decedent retained the remainder of the rental income. Susan further testified that upon the death of the decedent, the defendant took all the rental income.
The agreement did not give the defendant the right to retain rental payments in excess of the carrying charges of the properties. Rather, those rental payments were to be credited against the obligors' obligations to pay the carrying charges of the properties, with any excess to be retained by the decedent and/or her estate. Therefore, an accounting may be warranted to determine the income and expenses of the properties and the disposition of the income and expenses.
The Supreme Court denied an accounting because the plaintiff did not demand an accounting from the defendant before commencing this action, but it is apparent from this record that any demand for an accounting would have been futile—since the defendant claimed she owned the properties and the estate had no interest in them (see Kaufman v Cohen, 307 AD2d 113, 124).
With respect to the plaintiff's cross-motion for leave to amend the complaint to add a cause of action to impose a constructive trust on the properties, with a current estimated value of more than $1,100,000 and rent in excess of the carrying charges of the properties, "[i]n the absence of prejudice or surprise to the opposing party, leave to amend a pleading should be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit. The burden of demonstrating prejudice or surprise, or that a proposed amendment is palpably insufficient or patently devoid of merit, falls upon the party opposing the motion. . . . Moreover, [n]o evidentiary showing of merit is required under CPLR 3025(b)" (Choudhari v Choudhari, 220 AD3d 835, 838 [citations and internal quotation marks omitted]).
The four factors to be considered in ascertaining whether the imposition of a constructive trust is warranted are the existence of a fiduciary or confidential relationship, a promise, a transfer of some asset in reliance thereon, and unjust enrichment (see Koumantaros v Koumantaros, 223 AD3d 887, 888).
Here, "[t]here is no doubt that . . . family ties constitute a confidential relationship" (Reiner v Reiner, 100 AD2d 872, 874; see Koumantaros v Koumantaros, 223 AD3d at 888). The defendant acknowledged at her deposition that she and her sister, Susan, were "closer than close" and the defendant's relationship with the decedent was also close, since they held funds together in a joint account that was used to pay bills.
"Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded" (Minzer v Minzer, 206 AD3d 721, 723 [internal quotation marks omitted]). However, "[a]lthough a stand-alone claim for unjust enrichment is barred where, as here, there is a valid written contract, that does not act as a bar to a constructive trust" cause of action (Barker v Gervera, 236 AD3d 1318, 1326 [citations omitted]; see Enzien v Enzien, 96 AD3d 1136). In this case, unlike in Hamrick v Schain Leifer Guralnick (146 AD3d 606), cited by the majority, the plaintiff demonstrated a colorable claim to a fiduciary relationship between the parties based upon undisputed facts.
Here, the defendant was legal owner of the properties, but that did not mean that no one could claim an interest in the properties through a constructive trust (see Koumantaros v Koumantaros, 223 AD3d at 888). There is no dispute that the decedent acquired the properties without any help from the defendant, owned them in her sole name until she entered into the agreement, and lived in one of them until her death. Taxes and insurance were paid from rent, which may have exceeded the expenses of the properties, and funds from the properties were deposited in a joint account held by the decedent and the defendant to pay bills. Although the alleged default occurred 3 years after the agreement was entered into and approximately 20 years before the decedent's death, the decedent never received a notice of default advising her that the defendant considered her in default and, therefore, that the defendant would retain those assets upon her death—with the other siblings receiving nothing. Indeed it was only upon her mother's demise that the defendant claimed a full stake in her mother's properties. Further, since there is evidence that the defendant retained the properties and the rent after the decedent's death, there is a triable issue of fact here as to whether the defendant was unjustly enriched by retaining and/or taking assets of the decedent, with whom she had a fiduciary relationship. Further, there are triable issues of fact as [*7]to whether the closing costs were in fact paid out of income from the properties, and whether the defendant unlawfully retained—and, therefore, converted—a portion of that income, which could be resolved with an accounting.
Under the circumstances, the defendant's motion for summary judgment dismissing the complaint and pursuant to CPLR 6514(a) to cancel the notices of pendency against the properties should have been denied, and the plaintiff's cross-motion for leave to amend the complaint should have been granted.
ENTER:
Darrell M. Joseph
Clerk of the Court